UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 17-8477-MWF (RAOx)　　　　　　　Date: January 26, 2018
Title:　　Giovanny Mejia *-v.-* Parker Hannifin Corporation

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):** ORDER RE MOTION TO REMAND [13]

Before the Court is Plaintiff Giovanny Mejia's Motion to Remand (the "Motion"), filed on December 21, 2017. (Docket No. 13). On January 8, 2018, Defendant Parker Hannifin Corporation ("Parker") filed an Opposition. (Docket No. 16). Plaintiff replied on January 12, 2018. (Docket No. 20).

The Court has read and considered the papers filed on the Motion. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court deems this matter appropriate for decision without oral argument, and therefore vacates the hearing set for January 29, 2018.

For the reasons set forth below, the Motion is **DENIED**. Defendant has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $75,000.

## I.　　BACKGROUND

Plaintiff commenced this action on October 5, 2017, in in Los Angeles Superior Court. (*See* Complaint (Docket No. 1-1)). He alleges discrimination and retaliation on the basis of his disability, in violation of the California Fair Employment and Housing Act ("FEHA") and public policy. (*See id.*). Defendant removed the action to federal court on November 21, 2017. (Notice of Removal (Docket No. 1)).

In the Complaint, Plaintiff alleges that he worked as a machine operator for Defendant for over eight years. (Compl. ¶ 15). On May 4, 2016, Plaintiff suffered a

work-related injury to his abdomen, which limited his ability to perform his work. (*Id.* ¶ 17). In December 2016, Plaintiff's doctor allowed him to work with certain restrictions on his physical activity. (*Id.* ¶¶ 18–19). Soon thereafter, on January 19, 2017, Plaintiff was terminated, apparently in connection with a reduction in force. (*Id.* ¶ 20). Other employees terminated in connection with the reduction in force, with the exception of Plaintiff and one other employee who was also disabled, were given six months to relocate or find new jobs with Defendant. (Compl. ¶ 20).

Based on these alleged facts, Plaintiff further alleges that Defendant discriminated and retaliated against Plaintiff by terminating his employment due to his disability, and that Defendant failed to properly engage in good faith in the interactive process to accommodate Plaintiff. (Compl. ¶¶ 23–24). As a result of Defendant's conduct, Plaintiff alleges he has suffered and continues to suffer general and special damages, including pain and emotional distress, medical expenses, expenses for psychological counseling and treatment, and past and future lost wages and benefits. (*Id.* ¶ 28). He seeks compensation for past and future lost wages, bonuses, commissions, benefits and loss or diminution of earning capacity. (*Id.* ¶ 29). He also seeks damages for emotional and mental distress and punitive damages. (*Id.* ¶¶ 30–31).

## II.     LEGAL STANDARD

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]" 28 U.S.C. § 1441(a). In most circumstances, "federal district courts have jurisdiction over suits for more than $75,000 where the citizenship of each plaintiff is different from that of each defendant." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (citing 28 U.S.C. § 1332(a)). The parties do not dispute that there is complete diversity; therefore, the principal issue is whether the amount in controversy meets the jurisdictional requirement.

In cases removed from state court, the removing defendant bears the burden of establishing federal jurisdiction, including any applicable amount in controversy requirement. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)

("[T]he defendant seeking removal bears the burden of proof to establish by a preponderance of the evidence that the amount-in-controversy requirement is satisfied." (citation omitted)).

The Ninth Circuit employs the following framework for determining the amount in controversy on removal.  First, a "court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mut. Automobile Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).  If not, the court may consider facts in the removal petition and require parties to submit "summary-judgment-type evidence" relevant to the amount in controversy.  *Id.*; *see also Corbelle v. Sanyo Elec. Trading Co.*, No. CV03-01509, 2003 WL 22682464, at *3 (N.D. Cal. Nov. 4, 2003).

## III.  DISCUSSION

As a threshold matter, neither party appears to dispute that it is not facially apparent from the Complaint that the jurisdictional amount is in controversy.  Plaintiff's argument is that Defendant has failed to provide sufficient evidence to meet its burden with respect to the amount in controversy.  (Mot. at 4).

### A. Lost Wages and Benefits

Although the parties appear to agree that Plaintiff's lost wages through the date of removal are approximately $31,011, they dispute whether the amount of lost wages should be projected through a hypothetical future trial date.  Defendant argues that, assuming a trial date one year from the filing of the Complaint, the total lost wages from Plaintiff's date of termination through the trial date would be $62,727.20.  (Opp. at 6).  Plaintiff, however, argues that projecting the lost wages through a trial date is speculative, and that the case law does not support such an extrapolation.  (Mot. at 5; Reply at 2–3).

District courts in the Ninth Circuit tend not to engage in such extrapolation.  In the very case Defendant cites in support of projecting lost wages through the trial date, although the district court did ultimately find the amount in controversy requirement

was met, it first "decline[d] defendant's invitation to extrapolate lost wages through a hypothetical future trial date." *Ponce v. Medical Eyeglass Ctr., Inc.*, No. CV 15-4035-CAS (JEMx), 2015 WL 4554336, at *2 (C.D. Cal. July 27, 2015).  Instead, the district court concluded the economic damages at issue were only the lost wages "to date." *Id.* Other district courts have similarly capped the amount of lost wages at the date of removal rather than through the trial date. *See, e.g.*, *Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-9154-AB (AJWx), 2015 WL 898468, at *4 (C.D. Cal. Mar. 3, 2015) (limiting lost wages to wages lost through date of removal because the "weight of authority requires the Court to ascertain jurisdiction at the time of removal"); *Fortescue v. Ecolab, Inc.*, No. CV 14-253-FMO (RZx), 2014 WL 296755, at *2 (C.D. Cal. Jan. 28, 2014) (declining to project lost wages forward to some hypothetical trial date); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1032 (N.D. Cal. 2002) (same).

Although Defendant does point to one case (albeit for a different purpose) in which the district court chose to project lost wages through trial for the purposes of determining the amount in controversy, *see Garcia v. ACE Cash Express, Inc.*, No. CV 14-285-DOC (RNBx), 2014 WL 2468344, at *4 (C.D. Cal. May 30, 2014), it is clear that the weight of authority does not support such projection.

Accordingly, for purposes of determining whether the jurisdictional amount is in controversy, the Court concludes that Plaintiff's economic damages are $31,011 in lost wages plus the amount of lost benefits through the date of removal, which Defendant estimates to be $227.84 (Opp. at 7), for a total of $31,238.84.

### B. Emotional Distress Damages

Plaintiff also seeks unspecified damages for emotional distress.  Emotional distress damages may be considered in determining the amount in controversy. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). A defendant may introduce evidence of jury verdicts in other cases as evidence of a plaintiff's potential emotional distress damages. *Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012); *see also Kroske*, 432 F.3d at 980 (holding that a district court did not err in concluding that emotional distress damages added at least

$25,000 to the amount in controversy based in part on "emotional distress damage awards in similar age discrimination cases in Washington").

In both its Opposition and Notice of Removal, Defendant has set forth examples of jury verdicts in discrimination cases and concluded that, based on those examples, Plaintiff's estimated emotional distress damages are $37,213.20. (Opp. at 7–11; Notice of Removal at 8). Plaintiff argues that Defendant has not done enough to show that these examples are factually analogous to this case, and that the Court should therefore disregard Defendant's estimate. (Mot. at 6; Reply at 3–6).

The question, then, is just how factually analogous the cases on which Defendant relies must be. "While settlements and jury verdicts in similar cases can provide evidence of the amount in controversy, the cases must be factually identical or, at a minimum, analogous to the case at issue." *Aguilar v. Wells Fargo Bank, N.A.*, No. EDCV 15-1833-AB (SPx), 2015 WL 6755199, at *5 (C.D. Cal. Nov. 4, 2015) (quoting *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012)). The district court in *Aguilar* thus demanded a high level of factual similarity. It was not enough for the example cases to concern allegations of discrimination and retaliation based on the plaintiff's race or national origin; the type and extent of discrimination had to be similar to the discrimination alleged in the *Aguilar* case. *Id.* at *5-6.

However, overall, district courts appear to require only "analogous" or even "similar" examples, not identical cases. *See, e.g.*, *Castillo v. ABM Indus., Inc.*, 2017 WL 5609791, at *3–4 (C.D. Cal. Nov. 20, 2017) ("Such cases must be factually analogous, but they need not be identical."); *Ponce*, 2015 WL 4554336, at *4 (finding "similar cases" sufficient to determine that potential emotional distress award was more than nominal, without deciding if the examples were "sufficiently analogous" or "quantifying the exact value" the plaintiff's emotional distress claim); *see also Kroske*, 432 F.3d at 980 (holding district court properly considered "emotional distress awards in similar age discrimination cases in Washington"); *Cain*, 890 F. Supp. 2d at 1250-51 (using simply "other insurance bad faith cases" as examples to estimate emotional distress damages).

Based on the authority described above, the Court will consider similar cases involving disability discrimination and retaliation sufficient.  As Plaintiff points out, many of the cases Defendant cites in the Notice of Removal and Opposition involve different kinds of discrimination:  race, age, and sex discrimination, for example.  (Reply at 3-4).  However, several of the recent jury verdicts cited in Opposition are similar in that they involve single plaintiffs in Southern California asserting disability discrimination, retaliation, and wrongful termination claims, all of which Plaintiff asserts here.

For example, in *Ko v. The Square Grp.*, JVR No. 1503030036, 2014 WL 8108413 (Cal. Super. June 16, 2014), the plaintiff alleged she had been discriminated against based on her disability after she was denied medical leave and an interactive process meeting, and then was terminated.  A Los Angeles Jury awarded her $125,000 in pain and suffering damages.  In *Gomez v. Magco Drilling*, JVR No. 1510280054, 2015 WL 6523737 (Cal. Super. Sept. 24, 2015), a Los Angeles jury awarded $45,000 in pain and suffering to a plaintiff for disability discrimination and failure to accommodate where the plaintiff suffered a work-related injury and was terminated following requests for accommodation.

Plaintiff cites several other cases that involve disability discrimination in addition to discrimination based on other factors, such as national origin, gender, or age.  The juries in those cases awarded pain and suffering damages ranging from $25,000 to $3.5 million.  (Opp. at 8-10).

Based on these cases, the Court concludes that emotional distress damages in this action are potentially substantial, "[w]ithout deciding whether this case is sufficiently analogous to those cited by Defendant, or quantifying the exact value of Plaintiff's claims for emotional distress."  *See Ponce*, 2015 WL 4554336, at *4; *Sasso*, 2015 WL 898468, at *6; *see also Hurd v. Am. Income Life Ins.*, 2013 WL 5575073, at *7 (C.D. Cal. Oct. 10, 2013) ("Punitive damages and emotional distress damages in disability discrimination cases can be 'substantial' even when lost wages fall short of the jurisdictional minimum.").

### C. **Punitive Damages**

The parties similarly dispute whether Defendant has introduced jury verdicts from sufficiently factually analogous cases to support its conclusion that a punitive damage verdict would put the amount in controversy well over the jurisdictional threshold.  (*See* Mot. at 7-8; Opp. at 11-13; Reply at 6-7).  "It is well established that punitive damages are part of the amount in controversy in a civil action," where they are recoverable under one or more of the plaintiff's claims for relief.  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).  Most of Plaintiff's claims are brought pursuant to FEHA, under which punitive damages are available. Cal. Gov't Code § 12940; *see Simmons*, 209 F. Supp. 2d at 1033 (considering punitive damages towards amount in controversy in FEHA case).  Where the plaintiff seeks punitive damages but does not specify a particular amount, the defendant "may introduce evidence of jury verdicts in cases involving analogous facts" in order to establish probable punitive damages.  *Simmons*, 209 F. Supp. 2d at 1033.

District courts evaluate estimated punitive damages awards for amount in controversy purposes in the same way they evaluate estimated emotional distress damages.  *See, e.g.*, *Ponce*, 2015 WL 4554336, at *5; *Sasso*, 2015 WL 898468, at *6; *see also Simmons*, 209 F. Supp. 2d at 1033 ("Notwithstanding these differences, the jury verdicts in these cases amply demonstrate the potential for large punitive damage awards in employment discrimination cases.").

In Opposition, Defendant describes several single-plaintiff disability discrimination cases with punitive damage awards ranging from $50,000 to $500,000.  (Opp. at 12-13).  For example, in *Ko v. The Square Grp.*, 2014 WL 8108413, described above, a Los Angeles jury awarded the plaintiff $500,000 in punitive damages.  Defendant also points to recent cases in this district in which the district courts noted that punitive damages awards alone in Southern California often exceed the jurisdictional amount.  *See Sawyer v. Retail Data, LLC*, No. CV 15-184-JVS (RNBx), 2015 WL 3929695, at *2 (C.D. Cal. Apr. 29, 2015) (holding amount in controversy requirement met partly because defendant "cite[d] to similar recent Orange County and Los Angeles County employment discrimination cases where plaintiffs were awarded

from $50,000 to $7.5 million in punitive damages"); *Stainbrook v. Target Corp.*, No. CV 16-90-ODW, 2016 WL 3248665, at *4 (C.D. Cal. June 8, 2016) (accepting defendant's argument that punitive and emotional distress damages alone could exceed $75,000 because punitive damages are often calculated as a multiplier of compensatory damages).

As with the emotional distress damages, the Court need not determine whether the cases Defendant cites are sufficiently factually analogous, and need not put an exact numerical value on a potential punitive damages award to conclude that a substantial punitive damages award is likely if Plaintiff succeeds on his Complaint. *See Ponce*, 2015 WL 4554336, at *5; *Sasso*, 2015 WL 898468, at *6.  In *Simmons*, the district court found that, although the facts of its own case were "far less egregious, defendant has met its burden of showing by a preponderance of the evidence that the amount in controversy should include a punitive damages award." 209 F. Supp. 2d at 1033.  Likewise, the Court here concludes that the amount in controversy here should include a punitive damages award.

### D. Attorneys' Fees

Attorneys' fees may be considered in determining whether the amount in controversy requirement has been satisfied if a plaintiff sues under a statute that authorizes an award of fees to the prevailing party. See *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir.1998). Here, plaintiff alleges claims under FEHA and requests attorneys' fees.  Because attorneys' fees are recoverable by the prevailing party in a FEHA action, *Simmons*, 209 F. Supp. 2d at 1034 (citing Cal. Gov. Code § 12965), they are properly considered part of the amount in controversy in this case.

The parties dispute whether the attorneys' fees should be limited to the fees incurred as of the date of removal.  (*See* Mot. at 9-10; Opp. at 14).  There is no controlling Ninth Circuit authority on the issue, but other district courts have reached the conclusion that attorneys' fees should only be estimated up to removal, and the Court agrees. *See, e.g., MIC Philberts Investments v. American Cas. Co. of Reading, Pa.*, 2012 WL 2118239, at *5 (E.D. Cal. June 11, 2012) ("While the Ninth Circuit Court of Appeals has not yet spoken on the issue, the Court notes that it appears that a

nascent consensus may be emerging among the district courts of this Circuit, finding that attorneys' fees not yet incurred may not be included in the amount in controversy calculation."); *Reames v. AB Car Rental Services, Inc.*, 899 F. Supp. 2d 1012, 1020 (D. Or. 2012) ("It appears that a nascent consensus may be emerging among the district courts of the Ninth Circuit that the split between the [Tenth Circuit] and [Seventh Circuit] lines of cases may best be resolved by adoption of the [Seventh Circuit] reasoning that attorney fees anticipated but unaccrued at the time of removal are not properly in controversy for jurisdictional purposes."); *Dukes v. Twin City Fire Ins. Co.*, 2010 WL 94109, at *2 (D. Ariz. Jan. 6, 2010) ("Future attorneys' fees are entirely speculative, may be avoided, and are therefore not "in controversy" at the time of removal.").

Defendant did not provide a factual basis for determining the amount of attorneys' fees incurred up to the date of removal, so the Court cannot include any attorneys' fees in its amount of controversy analysis.

However, even without an attorneys' fee award, the Court concludes that that the jurisdictional amount is in controversy here. Defendant has demonstrated that $31,238.84 in compensatory damages are at issue, and also demonstrated the likelihood that if Plaintiff prevails on his Complaint, substantial emotional distress and punitive damages awards will carry the total award over $75,000. The Court also notes that Plaintiff's refusal to stipulate to damages of $75,000 or less, while not determinative, is persuasive. Plaintiff argues that his refusal is irrelevant (Reply at 1), but other district courts have found such a refusal "weighs in favor of a determination that the amount in controversy exceeds $75,000," especially where, as here, Plaintiff provides no evidence that it does not. *See, e.g., Sawyer*, 2015 WL 3929695, at *3.

## IV.  CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

IT IS SO ORDERED.